SALVATORE R. MAZZOTTA *vs.* SALVATORE MAZZOTTA
ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 10th—decided February 13th, 1936.

*Frederic W. Dauch,* for the appellant (plaintiff).

*Millard Bartels,* for the appellees (defendants).

MALTBIE, C. J. The compensation commissioner on October 19th, 1933, approved a compensation agreement under the terms of which the plaintiff was to receive $21 a week on account of total incapacity, this amount being based upon an average weekly wage

recited in the agreement to be $45. On April 2d, 1934, the commissioner held a hearing upon a motion of the respondent insurer to open and modify the award. At that hearing it was proved that the average weekly wage received by the plaintiff before the injury based upon nine weeks of employment, was in fact $22.67. It also appeared that the employer was the uncle of the plaintiff and that their wives were sisters. The commissioner has found that the statement in the agreement that the average weekly wage of the plaintiff was $45 was due to misleading information furnished by the employer to the insurer, in order to secure for the plaintiff, toward whom he was sympathetic, the maximum compensation allowed by law and that the insurer was the victim of an imposition practiced upon it. These findings are attacked.

There was evidence before the commissioner to this effect: The employer signed a report to the insurer in which it was stated that for the week in which the plaintiff was injured he received $12 and for each of the preceding two weeks $45; that he had been regularly paid at the rate of $45 a week for about a month; and that previous to this he had received $75 a week. Because of the large amount of the weekly wages last stated an investigator for the insurer interviewed the employer, and was shown a book containing a payroll which substantiated the statement that the plaintiff had been receiving $45 a week previous to his injury. In fact, for the nine weeks previous to the injury the largest amount the plaintiff had received for any week was $42 and the average amount was $22.67. We cannot hold, as claimed by the plaintiff, that the employer gave false information as to the wages paid because of a misunderstanding in regard to the information required in the report and that sought by the investigator. The commissioner was justified in

drawing the inferences he states in the findings attacked. He has refused to find that the insurer was negligent in not further investigating the matter and we cannot say that it was as matter of law. The plaintiff, when he signed the agreement, must have known of the falsity of the recital as to his weekly wage and there was evidence which the commissioner might have accepted that, at the time when he signed it, it was pointed out to him that the $21 agreed to be paid was the amount due him upon the basis of a weekly wage of $45. It sufficiently appears, therefore, that the insurer signed the agreement as a result of fraud practiced upon it, without any fault upon its part which would debar it from relief in this proceeding, and that the plaintiff was a party to the fraudulent transaction as regards the action taken by the commissioner upon the basis of that agreement.

Section 5240 of the General Statutes provides that: "The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court." See *Grabowski* v. *Miskell,* 97 Conn. 76, 83, 115 Atl. 691; *Hayden* v. *Wallace & Sons Mfg. Co.,* 100 Conn. 180, 185, 123 Atl. 9; *Kurzaji* v. *Warner and Bowman,* 106 Conn. 90, 92, 137 Atl. 19. No such circumstances are present here as led this court in the *Hayden* case to the conclusion that a court of equity would not open the award then in question. The record discloses no claim by the plaintiff that, if this case does not fall within the *Hayden* case and if the finding stands uncorrected, the situation did not justify the commissioner in opening the award and we have no occasion to pursue the inquiry further.

The plaintiff seeks to have the finding corrected so that it would appear that during the latter part of April and again during the latter part of May there

were quarrels between the plaintiff and the employer resulting in each instance in the discharge of the former, with a subsequent re-employment, under such circumstances that there was a definite break in his employment and he claims that his average weekly wage should, therefore, be computed upon his earnings for the three weeks between the time of the last re-employment and his injury. So far as appears the plaintiff was not working under any definite contract but was employed from day to day. Under such circumstances there could be no discharge in the sense of a termination of a contract of employment; his employment on any day merely gave rise to a right to compensation for services actually performed. *Emerick* v. *Connecticut General Life Ins. Co.*, 120 Conn. 60, 65, 179 Atl. 335. Each day he worked was in effect a new employment. There was only one week during the period considered by the commissioner in computing the plaintiff's average weekly wage in which he was not paid some wages by the employer. It does not appear that he worked for anyone else during the period in question or that the employer hired anyone else to take his place. Despite any notice which the employer might have given to him not to resume work, the situation did not essentially differ from one where an employee is indefinitely laid off. Average weekly wages under § 5238 of the General Statutes are determined upon the basis of actual earnings. The commissioner was not in error in concluding that there was no such break in the plaintiff's employment as to limit the determination of his average weekly earnings to the period after his last so-called discharge.

There is no error.

In this opinion the other judges concurred.