### EMLEN et al. v. SOCIAL SECURITY BOARD.

### No. 8691.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 18, 1945.

Decided April 19, 1945.

928

Hubert H. Margolies, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., and Arnold Levy, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

Shippen Lewis, of Philadelphia, Pa., for appellee.

Before BIGGS, GOODRICH, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Pursuant to the provisions of the Social Security Act, 42 U.S.C.A. § 301 et seq., Marie A. Emlen filed application with the Bureau of Old-Age and Survivors Insurance of the Social Security Board, for insurance benefits on behalf of her children and herself, as widow of Arthur C. Emlen, who died on January 26, 1941. The Bureau determined that the claimant was not entitled to benefits on the ground that her deceased husband was not an insured individual · within the intendment of the Social Security Act. Subsequently, claimant requested a hearing before a referee, who sustained the Bureau; and upon review, the Appeals Council sustained the decision of the referee. Thereafter, claimant, under 42 U.S.C.A. § 405(g), brought action in the district court to review the determination of the Appeals Council, and after a hearing, its decision was reversed and judgment entered in favor of the claimant. From such judgment, the Social Security Board has appealed.

According to the provisions of the Social Security Act, in order to have attained a fully insured status, the wage earner in this case must have acquired eight quarters of coverage subsequent to 1936. A "quar-ter" and a "calendar quarter" mean a period of three calendar months, ending on March 31, June 30, September 30, or December 31. A "quarter of coverage" means a calendar quarter in which the individual has been paid not less than $50 in wages. To be currently insured, the wage earner must have been paid wages of not less than $50 for each of not less than six of the twelve calendar quarters immediately preceding the quarter in which he dies. 42 U.S.C.A. § 409.

Arthur C. Emlen, the wage earner under the provisions of the statute, was president and sole stockholder of Harrison, Mertz and Emlen, Inc., landscape engineers, and as principal executive officer of the company, had complete authority with respect to its finances. By resolution of the board of directors, his salary was fixed at $4,000 per year on April 1, 1937, and later, at $3,000 per year, starting as of January 1, 1939.

The evidence disclosed that there were only seven quarters subsequent to 1936, in which Emlen had actually been paid not less than $50 in wages, and that there were only two quarters out of the 12 calendar quarters immediately preceding the quarter in which he died, in which he was paid not less than $50 in wages. It was on this evidence that the referee and the Appeals Council of the Social Security Board denied the allowance of the claim.

It is, however, contended on behalf of the claimant, that her husband was fully and currently insured at the time of his death by virtue of "constructive" payments to him of the wages for the requisite number of quarters. The district court determined that he had been so constructively paid, and entered judgment accordingly.

The Social Security Act defines wages as "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; * * * ." 42 U.S.C.A. § 409(a).

Section 402.13 of Regulations No. 2, promulgated by the Board under the pertinent provisions of the Social Security Act, 42 U.S.C.A. § 1302, and still controlling,[1] provides:

"Wages. The term 'wages' means all remuneration for employment.

"Wages may be either actually or con-

[1] Title 20, Code of Federal Regulations, § 402.13; Title 20, 1940 Supp. of Code of Federal Regulations, § 403.801 (m); Title 20, Cum.Supp. of Code Federal Regulations, § 403.801(m).

structively paid to the employee. Wages are constructively paid when they are credited to the account of or set apart for the employee so that they may be drawn upon by him at any time although not then actually reduced to possession. To constitute payment in such a case the wages must be credited or set apart to the employee without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is made, and must be made available to him so that they may be drawn at any time, and their receipt brought within his own control and disposition."

■ Formerly, under the Social Security Act, the employer was taxed on the wages payable by him regardless of the time of their payment. 49 Stat. 639; 42 U.S.C.A. § 1101. In the 1939 Amendments, Congress made the basis of the tax, "wages paid" in place of "wages payable." 53 Stat. 1387, 26 U.S.C.A. Int.Rev.Code § 1600. In their reports on the Amendments, the appropriate committees of both the House of Representatives and of the Senate, set forth that the above-mentioned amendment changed the basis for determining the tax liability from "wages payable" to "wages paid", and stated: "Wages, for the purpose of these taxes, are considered paid when they are actually paid, or when they are constructively paid, i. e., credited to the account of, or set apart for, the wage earner so that they may be drawn upon by him at any time although not then actually reduced to possession." H.R. No. 728, 76th Cong., 1st Sess., p. 62; S.R. No. 734, 76th Cong., 1st Sess., p. 75. If there were any doubt whether the Regulation in question was a proper construction of the statute, Congress, by its enactment of the amendment, with express recognition of such interpretation, would be deemed to have placed its approval thereon, and to have made such construction part of the law itself.

■ As the chief executive officer of the corporation, Emlen had the power to draw checks upon the corporation without counter signature. During all of the critical quarters he was duly credited upon the books of the corporation with salary in excess of $50 per month. He could properly have drawn such salary merely by signing a check upon the corporation, payable to himself,—as he actually did for the other quarters. Under such circumstances, it is claimed that the crediting of earned salary to Emlen on the books of the corporation was constructive payment of such wages, as that term is defined in the Regulations of the Social Security Board.

The Government contends that there were limitations and restrictions upon the payment of the wages to Emlen, and bases its argument upon the fact that he left his salary with the corporation, as stated by his widow, "because the credit of the other creditors came ahead of him * * *. Furthermore, he realized that had he taken his salary in cash, it would have resulted in the corporation not having sufficient cash to pay its creditors, many of whom had extended credit to the corporation because of my husband's reputation in connection with the business. * * * After December 17, 1938, Mr. Emlen received no salary, thinking it more important for his creditors and employees and the ultimate good of the business, to leave in the business money which he might have withdrawn as salary to himself." Such considerations in the wage earner's mind did not result in subjecting the wages so credited, to substantial limitations or restrictions as to the time or manner of payment or conditions upon which payment was to be made.

We are of the opinion that, according to the plain language of the Regulation above quoted, the wages for the critical quarters were constructively paid to Emlen. It is beyond question that they were credited to his account during those periods, and that they could have been drawn upon by him at any time. They were credited to him—in the words of the Regulation—"without any substantial limitation or restriction as to the time or manner of payment, or conditions upon which payment is to be made." They were made available to him so that they might be "drawn upon at any time and their receipt brought within his own control and disposition."

If, during each of the critical quarters, Emlen had been actually paid $50 in wages, he would have been fully and currently insured, according to the requirements of the statute. The corporation always had funds on hand greatly in excess of this amount, out of which such portion of wages could have been paid. According to the statute, it was not necessary that the wage earner be paid the entire amount of the salary due him in each quarter, in order that he be currently insured. There were sufficient wages credited to Emlen

and sufficient corporate funds on hand upon which he could draw, without limitation or restriction, to permit wage payments of $50 a quarter to be made to him during the critical quarters. Under the Regulation above mentioned, there was a constructive payment of wages sufficient to satisfy the statutory requirement for Emlen's status as a currently insured wage earner.

The judgment of the district court is affirmed.

BIGGS, Circuit Judge (dissenting).

Regulations No. 2, Section 402.13, defines "wages paid" but the interpretation of the Regulation by the court below is erroneous. The Social Security Board has the power and the duty to interpret the regulations promulgated by it and to base its administrative practices upon such interpretations. Cf. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 325, 53 S.Ct. 350, 77 L.Ed. 796; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; and National Labor Relations Board v. J. S. Popper, Inc., 3 Cir., 113 F.2d 602, 603–604. In the case at bar the Board has found that there was, in the language of the Regulation cited, a " * * * substantial limitation or restriction as to the time or manner of payment or condition upon which payment is made * * *."

Whether or not there is such a substantial limitation or restriction is a question of fact, analogous to the fact question not infrequently presented in tax litigation as to whether a dividend has become subject to a taxpayer's demand. See Avery v. Commissioner of Internal Revenue, 292 U.S. 210, 214, 54 S.Ct. 674, 78 L.Ed. 1216. Section 205(g) of the Social Security Act as amended, 42 U.S.C.A. § 405(g), provides that "The findings of the Board as to any fact, if supported by substantial evidence, shall be conclusive * * *." The ruling of the Supreme Court in Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301, seems persuasive. In the cited case, in determining the validity of a ruling of the Director of the Bituminous Coal Division of the Department of the Interior, Mr. Justice Reed stated, 314 U.S. 402, at page 411, 62 S.Ct. 326, at page 332, "In a matter left specifically by Congress to the determination of an administrative body * * * the function of review placed upon the courts * * * is fully performed when they determine that there has been a fair hearing, with notice and an opportunity to present the circumstances and arguments to the decisive body, and an application of the statute in a just and reasoned manner."

In my opinion in the case at bar the Board applied the pertinent provisions of statute and regulations in a just and reasoned manner. The heart of the learned District Judge's conclusion to the contrary lies in the following quotation from his opinion: "I think it plain that the test of whether there was a substantial limitation or restriction upon the availability of the funds must be sought outside of Mr. Emlen's own mind and motives." [54 F.Supp. 498, 499] The opinion of the court below and that of the majority of this court treat as the decisive consideration the fact that Emlen as chief executive officer and sole custodian of the corporation's funds had the power to pay himself. Under the circumstances of the case at bar I can see no reason why the substantial limitation or restriction upon the availability of the funds must be sought outside of Emlen's own mind and motives. As chief executive officer of the corporation he had to decide whether or not the corporation should pay him. As head of the corporation he may have concluded that if he collected the salary due him he might wreck the enterprise or defraud creditors. Such an inference as to Emlen's motives justifiably was drawn by the Board. Emlen's obligations to his corporation and his corporation's obligations to him were in sharp conflict. The limitation or restriction was sufficiently substantial to prevent him from making payment to himself. The fallacy of the majority view is apparent if Emlen's duty as the chief executive officer and sole custodian of the bank account of his corporation is distinguished from the corporation's obligation to him as a creditor.

For these reasons I must dissent respectfully from the views expressed by the majority.