**HENNESSEY v. FEDERAL SECURITY ADMINISTRATOR.**

Civ. No. 2493.

United States District Court
D. Connecticut.

April 29, 1949.

Pouzzner, Hadden, Kopkind & Hadden, New Haven, Conn., for plaintiff.

Adrian W. Maher, U. S. Atty., Dist. of Connecticut, Edw. J. Lonergan, Asst. U. S. Atty., Dist. of Connecticut, Hartford, Conn., for defendant.

SMITH, District Judge.

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a decision of the Appeals Council of the Social Security Administration affirming a determination by a referee disallowing the plaintiff's claim for old age insurance benefits under said Act. The action is presently before this Court on defendant's motion to dismiss or for summary judgment, and for the purposes of the hearing on said motions a certified copy of the record of the administrative proceedings in this case has been made a part of the court file.

There is no genuine issue as to any material fact. Sometime prior to September 15, 1947 the plaintiff, over sixty-five years of age, made inquiry as to her status under

the Act. She was advised by a representative of the Social Security Administration that she needed two more quarters of coverage for a fully-insured status, and claims that she was told by the representative that all she had to do was to "make" at least $50 in a quarter to obtain a quarter of coverage.

Subsequently, on September 15, 1947, the plaintiff returned to work for a former employer with the express purpose of obtaining the additional quarters. She worked two weeks, during September, earning total wages of $60.74 for her hours of work, recorded by a time-clock. During the month of September, however, she received only the first week's earnings, $30.37, it being the custom of the employer, except in the case of discharge, to defer payment for wages earned at the conclusion of a work-week on Friday, one week, or the following Friday. Accordingly, wages earned during the last full week in September amounting to $30.37 were not paid to her until the regular pay-day, October 3, 1947. The plaintiff continued to render services through October 21, 1947 and was paid a further amount of $85.41 in that month.

On October 22, 1947 the plaintiff filed an application with the Bureau of Old Age and Survivor's Insurance, Social Security Administration, for the primary benefits provided in Section 202(a) of the Social Security Act, as amended, 42 U.S.C.A. § 402(a). The Bureau disallowed the plaintiff's application on the ground that she had acquired only fifteen quarters of coverage and needed one more quarter to be a fully-insured individual.

Acting pro se, the plaintiff requested a hearing before a referee of the Social Security Administration. The referee sustained the Bureau's ruling and found that the $30.37 paid to the plaintiff on October 3, 1947 was not constructively paid to her in September or the third quarter of 1947.

Plaintiff's request for review of the referee's decision was denied by the Appeals Council.

The requirements of eligibility for primary insurance benefits are not in dispute. The Act, as amended, clearly establishes that, in addition to other requirements, a claimant, to be entitled to its old-age benefits, must have been "paid" $50 wages in a specific number of calendar quarters. The sole question raised by this action for review is whether or not there was a constructive payment of plaintiff's wages earned during the last week of September and the third quarter of 1947 constituting "wages paid" within the meaning of the Act and of Regulation No. 3, Section 403.-801(m), which reads as follows: " 'Wages paid' means wages actually or constructively paid. Wages are constructively paid when they may be drawn upon by the employee at any time although not then actually reduced to possession. In such a case, a constructive payment can be found to have been made only where (1) the wages have been credited or set apart to the employee without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made and are available to him so that they may be drawn at any time, and their receipt brought within his own control and disposition, or (2) there is an intention by the employer to pay or to set apart or credit, and ability to pay wages when due, and failure of the employer to credit or set apart the wages is due to clerical error or inadvertence in the mechanics of payment and because of such clerical error or inadvertence, the wages are not actually available at that time. However, where the employee has authority to withhold wages from himself in the interest of the employer, his failure to reduce any of his wages to possession shall be deemed to be in the interest of his employer and to establish the employer's intent not to pay such wages, unless there is a clear showing that such withholding was exclusively in the employee's interest."

It is apparent from the face of the Regulation that the principal requirement for constructive payment is the availability of the wages to the employee in that "they may be drawn upon by the employee at any time although not then actually reduced to possession." There has been no question raised here as to the employer's being in sufficient funds to make payment to the

plaintiff had she requested such at any time during the relevant period.

The crucial phrases of the Regulation in the instant case, however, are found in the third sentence, purporting to impose in the alternative one of two stated limitations upon the broad principal requirement,—the first, objective; the second, subjective.

Clearly the plaintiff's case falls within the first or objective limitation upon the general requirement. Plaintiff's wages were credited to her account by means of a clock-card and were thus set apart within the language and apparent intent of the Regulation.

The referee, however, invoking the latter half of the objective limitation, denied plaintiff's claim on the grounds that the earnings credited to the plaintiff were set apart with a limitation as to the time of payment, that there was no intention of paying claimant the $30.37 in question until October 3, 1947, and it would not have been paid to her prior to such date under circumstances other than in the case of discharge.

■ This was plain error in two respects. First, the objective limitation says nothing about intent nor does the Regulation require that both the objective and subjective limitations be satisfied to find a constructive payment. Willis v. The Federal Security Administrator [1] (1947 D.C.Conn.) Unreported. Civil Action No. 2100. Having once found that the case fell squarely within the objective limitation, it was error to apply both the objective limitation and part of a clearly alternative limitation, the element of the employer's intent. As Judge Hincks said in the Willis case,— "* * * intent obviously is important only when a plaintiff's case depends upon compliance with the subjective limitation * * *" Willis v. The Federal Security Administrator, supra, p. 5.

Second, the referee's determination that the $30.37 in question would not have been paid to her prior to October 3, 1947 under circumstances other than in the case of discharge does not justify the conclusion that there was a "substantial limitation or restriction" within the meaning of the Regulation. The plaintiff worked on an hourly basis, punching a time-card for each day's work. There was neither an express understanding between the plaintiff and her employer as to the making of payments at any time other than the regular "deferred" pay-day, nor a scintilla of evidence of any consideration for an enforceable obligation to forego the payment of plaintiff's wages at any particular time. Plaintiff merely acquiesced in a custom which was for the administrative convenience of the employer and is permitted under Connecticut law. Vid. Section 7361, Connecticut General Statutes, Revision of 1949.

■ At best, the plaintiff was working under a hiring indefinite as to the term of its continuance. Her employment might have been terminated at any time at either party's will. Such a contract for hire between plaintiff and her employer resembles a severable and divisible contract, running from day to day. Williston on Contracts (Rev.Ed.) Vol. 3, Section 862. Plaintiff's performance each day certainly gave rise to a legally enforceable right to compensation for services performed that day. Emerick v. Connecticut General Life Insurance Co., 1935, 120 Conn. 60, 61, 65, 179 A. 335, 105 A.L.R. 413; Mazzotta v. Mazzotta, 1936, 121 Conn. 149, 152, 183 A. 408.

Nor do I overlook the statutory regulations governing weekly hire which provide that an employee voluntarily terminating his or her employment as of a day shall be paid as of the following regular pay-day. Section 7361, Connecticut General Statutes, Revision of 1949. If the plaintiff voluntarily had terminated her employment on the last Friday in September, her employer, by operation of the statute, would have been permitted to defer payment to her to the following regular pay-day.

The language of the statute notwithstanding, I cannot believe that it was the intent of the Connecticut Legislature to place a substantial restriction or limitation on an employee by this provision. The provision plainly was intended to allow

1. No opinion for publication.

the employer a certain lapse of time before payment for his own administrative convenience, not to constitute a substantial limitation on the employee.

Though the plaintiff's employer could have restricted the plaintiff's payment thus, a mere possibility of a restriction without affirmative evidence that the employer would not have paid her under any circumstances upon her demand at the end of a day or a week will not suffice as "substantial limitation or restriction" within the meaning of the Act and Regulation.

The wages were credited to her account. There is not the slightest shred of evidence that the plaintiff could not have "drawn" her wages earned ·for the week at any time had she attempted to do so, irrespective of motive. The record merely reveals that it was the employer's custom, as it is many employers' practice in this state and approved by statute, to delay paying an employee for wages earned during a week, up to within eight days. Connecticut General Statutes, Revision of 1949, Section 7361.

■ There can be no "substantial limitation or restriction" within the meaning of the Regulation in the absence of evidence that the plaintiff could not have drawn upon her wages at any time had she chosen really to go after them. Cf. Aramo-Stiftung v. Commissioner of Internal Revenue, 2 Cir., 1949, 172 F.2d 896, 897; Emlen v. Social Security Board, 3 Cir., 1945, 148 F.2d 927. Willis v. Federal Security Administrator, supra.

■ I conclude, therefore, that there was no substantial limitation or restriction within the meaning of the Act and Regulation, that the plaintiff was constructively paid wages earned during the third quarter of 1947, and thus acquired the required sixteen quarters of coverage entitling her to primary insurance benefits under the Act.

The defendant's motion for summary judgment is denied.

■ This ruling gives rise to one further question: whether or not the action, even in the absence of a cross-motion by the plaintiff may be disposed of by summary judgment. The purpose of the summary judgment procedure under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., is to expedite the disposition of actions in which there is no genuine issue of fact requiring trial. The defendant whose motion has been denied has based his motion entirely on the record of the administrative proceedings before the referee and there is no genuine issue for trial.

If the plaintiff had made a proper motion, clearly she would be entitled to summary judgment under Rule 56(c). The Federal Rules of Civil Procedure have been liberally interpreted where a party's mistake, inadvertence, or mechanical failure to file a pleading may, on the face of the Rule, proscribe the Court's power to enter a judgment to which the party is entitled. 3 Moore's Federal Practice (1st Ed.) Section 56.02, p. 3183, n. 8. With the exception of default judgment cases, Rule 54(c) gives the Court the power to enter final judgment to which the prevailing party is entitled, even if the party has not demanded such relief in his pleadings.

There is no practical need for the mere mechanics of a cross-motion here where there can be no prejudice to the opposing party. The undisputed facts, contained in the certified copy of the record of the administrative proceedings, were relied upon by the defendant herein, and are adequate for purposes of appeal.

■ Absent any specific interdiction by Rule 56(c), and in accordance with the purpose of the rule to expedite the disposition of actions where there is no genuine issue as to a material fact, I conclude that the Court can properly enter a judgment in favor of the plaintiff here who is entitled to it. 3 Moore's Federal Practice (1st Ed.) Section 56.02, p. 3183. Cf. Hooker v. New York Life Ins. Co., D.C.1946, 66 F.Supp. 313; Northland Greyhound Lines, Inc. v. Amalgamated Ass'n of Street, Electric Railway and Motor Coach Employers of America, Division 1150, et al., D.C. 1946, 66 F.Supp. 431; Commercial Credit Corp. v. California Shipbuilding Corp., D. C.1947, 71 F.Supp. 936.

The plaintiff may submit an appropriate form of judgment for entry.