Fred P. HERBST, Plaintiff-Appellant,

v.

Robert FINCH, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 147, Docket 72–1637.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1972.

Decided Dec. 11, 1972.

Mel P. Barkan, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., New York City, on the brief), for defendant-appellee.

Fred P. Herbst, plaintiff-appellant, pro se.

Before FRIENDLY, Chief Judge, and MANSFIELD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The simple issue on this uncomplicated appeal is whether appellant, now a 74 year old retired buyer and seller of seeds, was entitled for the year 1967 to receive old-age insurance benefits under the Social Security Act without having deducted from such benefits wages and salary that he never received. We hold that he was.

Appellant Fred P. Herbst (Herbst) appeals from a judgment entered on April 3, 1972 in the Southern District of New York, Lloyd F. MacMahon, District Judge, 342 F.Supp. 765, on cross-motions for judgment on the pleadings in an action commenced by Herbst on March 18, 1969 seeking judicial review of a deci-

sion of the Secretary of Health, Education and Welfare (the Secretary) denying him old-age insurance benefits for the year 1967 on the ground that there had been constructive payment of wages to him during that year. The court, after reviewing the administrative record but without an evidentiary hearing, concluded that there was substantial evidence to support the Secretary's decision. Accordingly, it granted defendant's motion and denied plaintiff's motion, thus dismissing the complaint and affirming the decision of the Secretary. For the reasons stated below, we reverse and remand.

## I.

Herbst has been engaged in the business of buying and selling seeds since the early 1900's. While still a youth, he worked for his father in the operation of his seed business. After his father died in 1929, Herbst and his brother Gustave carried on their father's business as a partnership. In 1948, the business was incorporated and became Herbst Brothers Seedsmen, Inc. (Herbst Brothers). Herbst Brothers is a mail order business. Through a catalog, it offers and sells seeds to selected nurserymen and florists. After the business was incorporated, each of the brothers held 250 of the 500 issued shares. In 1965, Gustave retired and Herbst purchased Gustave's 250 shares for $125,000. On June 20, 1965, Herbst became president of the company.

In March 1966, Herbst began to consider retirement. At that time, he applied for federal old-age insurance benefits. The Social Security Administration determined that, although he was eligible for such benefits as of March 1965,[1] work deductions imposed against such benefits pursuant to § 203(b) of the Social Security Act, 42 U.S.C. § 403 (b) (1970), completely cancelled them.

At a board meeting on September 13, 1966, Herbst tendered his resignation as president effective January 1, 1967. At about the same time, he indicated to his sons—who were to take over the business —that he was formally retiring but would continue working without remuneration to help them get a start running the business. At the December 27, 1966 board meeting, Herbst's resignation was approved and one of his sons, Fred P. Herbst, Jr., was elected president of the company. During 1967, while giving advice and assistance to his sons, Herbst worked an average of 33 hours per week, as compared to an average of 65 hours per week prior to 1967. On November 15, 1967, he gave to his three sons 498 shares of Herbst Brothers stock. Later he gave the remaining two shares to the corporation.

Going back for a moment, on November 19, 1966, Herbst filed another application for old-age insurance benefits in which he stated that he intended to retire as of December 31, 1966 and requested that such benefits be paid to him beginning January 1967. On June 13, 1967, he was notified that his November 1966 application had been denied. He requested reconsideration of this decision with respect to the year 1967 only. On July 29, 1968, he was notified that a "reconsideration determination" had been made that he had performed services as an "employee" during 1967, that he had "excess earnings", and that deductions therefore must be imposed against benefits for all months of 1967. Herbst then requested a hearing before a hearing examiner of the Bureau of Hearings and Appeals of the Social Security Administration. The hearing was held on September 20, 1968.

## II.

Before turning to the decision of the hearing examiner, a brief statement of the statutory scheme as of 1967 for old-age insurance benefits may be helpful. The Social Security Act provides that deductions shall be made from old-age in-

---

1. The eligibility requirements for old-age insurance benefits are set forth in Section 202(a) of the Social Security Act, 42 U.S.C. § 402(a) (1970).

surance benefit payments if the claimant is charged with "excess earnings". Section 203(b) of the Act, 42 U.S.C. § 403 (b)(1970). "Excess earnings" for a taxable year are earnings for such year in excess of the product of $125 (now $140) multiplied by the number of months in such year, except that half of the first $1200 excess shall not be included. Section 203(f)(3) of the Act, 42 U.S.C. § 403(f)(3)(1970). An individual's earnings for a taxable year are the sum of his wages for services rendered in such year and his net earnings from self-employment, minus any net loss from self-employment. Section 203 (f)(5) of the Act, 42 U.S.C. § 403(f) (5)(1970). Wages are defined as any remuneration paid for employment. Section 209 of the Act, 42 U.S.C. § 409 (1970). For purposes of imposing deductions under Section 203(b), the Act creates a presumption that an individual in fact rendered services for wages in excess of the allowable maximum. Section 203(f)(4) of the Act, 42 U.S.C. § 403(f)(4)(1970). The claimant thus has the burden of proving that he "did not render such services in such month for more than such amount." *Id.*

Following the hearing at which the hearing examiner heard the testimony of Herbst and received additional documentary evidence, he filed his decision on October 14, 1968. The examiner found that during the calendar year 1967 Herbst made available to Herbst Brothers his experience and knowledge of the seed business and that he "actually and actively managed the corporation." On the basis of this finding, the examiner concluded that throughout the calendar year Herbst rendered substantial services to the corporation as an employee.

The examiner found as a fact that Herbst was not actually paid a salary or wages during the period. He also found, however, that Herbst still was entitled by a 1963 board resolution to an annual salary of $42,000 for services rendered by him to the corporation; that he was authorized to draw corporate checks; and that corporate funds were available to

cover checks amounting to his annual salary. On the basis of these facts, the examiner reached the following conclusion:

"It is obvious that the claimant was either 'constructively paid' the wages to which he was entitled, despite the fact that he did not reduce those wages to his immediate possession, or, in the alternative, that the claimant, by waiving his right to draw the salary of $42,000 per year to which he was entitled by order of the Board of Directors, increased the net assets of the corporation so that the stock of the corporation, of which he was the sole owner, became more valuable, i. e., the claimant received indirectly, in the increased value of his stock holdings, income as a result of the services which he performed as an employee of the corporation *during the calendar year* 1967."

Accordingly, the examiner held that work deductions for all months of 1967 completely eliminated the benefits to which Herbst otherwise would be entitled. The hearing examiner's decision became the *final decision of the Secretary on January 28, 1969 when the Appeals Council of the Social Security Administration denied Herbst's request for review. 20 C.F.R. § 404.951 (1972).

### III.

In the action brought by Herbst in the district court seeking judicial review of the Secretary's decision pursuant to 42 U.S.C. § 405(g) (1970), the court invoked the correct standard in holding that the findings of the Secretary are conclusive if supported by substantial evidence. Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518 (4 Cir. 1962), cert. denied, 372 U.S. 945 (1963); Medina v. Finch, 330 F.Supp. 121, 122 (D.Conn. 1971), aff'd, 465 F.2d 1405 (2 Cir. 1972).

We nevertheless must determine whether the Act and regulations promulgated thereunder have been properly applied. And in so doing, we are mindful

that "[t]he congressional policy underlying the federal social security legislation requires the courts to interpret the Act liberally, and any doubts should be resolved in favor of coverage." Rasmussen v. Gardner, 374 F.2d 589, 594 (10 Cir. 1967).

Herbst does not challenge the conclusion of the hearing examiner that he rendered substantial services as an employee to Herbst Brothers in 1967. But he does contend that he was not constructively paid wages for performing those services. We agree.

◼ The critical issue is whether Herbst was constructively paid wages within the meaning of 20 C.F.R. § 404.-1026(b)(2)(1972) ("the Regulation"), which provides in pertinent part:[2]

"(b) *When paid and received.* (1) In general, wages are received by an employee at the time they are paid by the employer to the employee. Wages are paid by an employer at the time that they are actually or constructively paid unless under subparagraph (3) of this section they are deemed to be subsequently paid. . . .

(2) [*First Sentence*] Wages are constructively paid when ·they are credited to the account of or set apart for an employee so that they may be drawn upon by him at any time although not then actually reduced to possession. [*Second Sentence*] To constitute payment in such a case (i) the wages must be credited to or set apart for the employee without any substantial limitation or restriction as to the time or manner of payment or· condition upon which payment is to be made, and must be made available to him so that they may be drawn upon at any time, and their payment brought within his own control and

disposition, or (ii) there is an intention by the employer to pay or to set apart or credit, and ability to pay wages when due, and failure of the employer to credit or set apart the wages is due to clerical error or inadvertence in the mechanics of payment, and because of such clerical error or inadvertence the wages are not actually available at that time. [*Third Sentence*] However, where the employee has authority to withhold wages from himself in the interest of the employer, his failure to reduce any of his wages to his possession shall be deemed to be in the interest of his employer and to establish the employer's intent not to pay such wages, unless there is a clear showing that such withholding was exclusively in the employee's interest. . . ."

Herbst certainly was not constructively paid wages within the meaning of the first two sentences of subparagraph (b)(2) of the Regulation. Wages were not "credited to" his account or "set apart" for him under what we consider to be a reasonable interpretation of those terms.

The record does not show any acts by the corporation which reasonably can be construed as payments to Herbst. The books of the corporation for 1967 did not show an allocation of funds to an account labeled "Salary—Fred P. Herbst, Sr." or anything of the sort. The corporation did not, actually or symbolically, segregate or set aside corporate funds for the purpose of paying Herbst a salary.[3] A board resolution had been passed in 1963, and not formally revoked prior to 1967, that authorized a $42,000 annual salary for Herbst. While this resolution may be some evidence of a general intention to pay Herbst a salary, it certainly does not amount to a "credit" or "setting apart" of funds.

2. For convenience of reference in our analysis of this Regulation which follows, we have marked off in brackets the three sentences that comprise subparagraph (b)(2) of the Regulation, e. g., "[*First Sentence*]".

3. There is no evidence that this failure to credit or set apart wages was "due to clerical error or inadvertence in the mechanics of payment". 20 C.F.R. § 404.-1026(b)(2)(ii)(1972).

The Regulation in its entirety is addressed to situations like that in Emlen v. Social Security Board, 148 F.2d 927 (3 Cir. 1945), where there was an intention to pay wages. No such intention was present in the instant case. The only asserted evidence of such intent here was the 1963 board resolution. The effect of that resolution, however, was substantially negated when Herbst indicated in late 1966 that he was turning over the company to his sons and would give advice and assistance to them without remuneration. Herbst's resignation as president and his substantial reduction of hours devoted to the company's affairs further indicate that he was no longer a salaried employee. We conclude that the 1963 resolution was not sufficiently vital in 1967 to constitute substantial evidence of an intention by the corporation to pay Herbst a salary. It is clear from the record that Herbst did not expect to be paid for his services and that the corporation did not intend to pay him. Since intent to pay was lacking, Herbst's authority to write checks against corporate funds and the corporation's ability to honor such checks are of no relevance.

Even if we were to assume that Herbst had wages credited to or set apart for him within the meaning of the first two sentences of the Regulation, we would still hold that the deductions were improper because of the third sentence. This provides that an employee may not have deductions imposed against his insurance benefits if he can prove that he had the authority to withhold wages from himself for the benefit of his employer and no clear showing is made that the withholding was exclusively in the employee's interest. Herbst certainly was an employee who had "authority" to withhold wages from himself in the interest of the "employer". He therefore should not have been subjected to "excess earnings" deductions unless there was a clear showing that "such withholding was exclusively in [Herbst's] interest".

It has not been clearly shown that Herbst's failure to collect wages allegedly available to him was exclusively in his own interest. The Secretary relies on the facts that the withholding may have increased the net worth of the corporation, and that Herbst was its sole stockholder. This provision of the Regulation, however, must mean something more than an increase in the net worth of a company 100% owned by the employee. Whether under such circumstances a failure to take possession of the wages is exclusively in the employee's interest, depends upon a variety of factors. For example, it would not be in the employee's interest if the corporation were in a precarious financial condition. We hold that the withholding in the instant case was not exclusively in the employee's interest within the meaning of the Regulation.

If the Secretary believes that individuals in the position of Herbst should be denied old-age insurance benefits under the Act, he should say so in language less Delphic than we find in this Regulation.

Reversed and remanded for proceedings not inconsistent with this opinion.

MANSFIELD, Circuit Judge (concurring):

I concur on the second ground asserted in the majority opinion, i. e., that since Herbst's withholding of his salary was not shown to be exclusively in his own interest, it is deemed to be in the interest of his employer within the meaning of the last sentence of 20 C.F.R. § 404.-1026(b)(2).