**Michael M. MARKARIAN, Plaintiff,**

v.

**Joseph CALIFANO, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ–78–51.**

United States District Court, W. D. New York.

July 10, 1979.

Robert D. Kolken, Buffalo, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Carol C. White, Asst. U. S. Atty., Buffalo, N. Y., Borge Varmer, Regional Atty., Region II, and Marjorie A. Silver, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, New York City, of counsel), for defendant.

CURTIN, Chief Judge.

This action was brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ["Act"], to review a final determination by the Secretary of Health, Education and Welfare which denied retirement insurance benefits to the plaintiff due to excess earnings. The plaintiff reached the age of 65 on October 12, 1974 and he filed an application for such benefits on October 18, 1974 which was denied initially and on reconsideration. A hearing before an Administrative Law Judge ["ALJ"] was held and on August 12, 1977, the ALJ determined that plaintiff was not entitled to retirement insurance benefits. This determination became the final decision of the Secretary when the Appeals Council affirmed it on December 2, 1977.

The factual background of this case began when the plaintiff came to the United States from Armenia in 1931. He and his brother started an Oriental rug business and from 1957 through the date of the hearing plaintiff has run his own rug business on Delaware Avenue in Buffalo, New York. The business both sells and repairs Oriental rugs. The repairing of rugs constitutes approximately 20% of the business. During the 40 years he has been in business, his wife has assisted him and is very skillful in repairing rugs. For the last 20 years he has had no employees. A truck is hired for the delivery of large rugs. The plaintiff testified that his store is connected to the living room of his apartment and that he can see the store well from the living quarters. He spends two or three hours in the store on an average day.

The plaintiff testified that he has taken business trips to New York City two or three times a year to purchase rugs and that his son, an interior decorator in New York, has assisted him with his business there. These trips have lasted seven or eight days during which time plaintiff visits six or seven dealers. On occasion, he also orders rugs by telephone.

In January 1974, plaintiff's business was incorporated as Michael M. Markarian and Son Oriental Rugs, Inc. Plaintiff owns 60% of the stock and is president of the corporation; his wife and son each own 20% of the stock and serve as directors of the corporation. Mr. Doherty, an accountant who has managed plaintiff's books since the incorporation, testified that on June 1, 1974 a note was given to the plaintiff by the corporation in the amount of approximately $55,000. This represented payment for the inventory of rugs which plaintiff transferred to the corporation and the note called for 10% interest. This note was increased to approximately $70,000 in 1975 and to $80,000 in 1976. Mr. Doherty also testified that a bank account for the corporation was opened and that separate records have been kept for the corporation. As a result of the incorporation, plaintiff has realized substantial tax savings.

In his opinion the ALJ discussed in detail the income tax returns of the plaintiff and his wife for the tax years 1973, 1974, and

1975, and the tax returns for the corporation for the years 1974 and 1975. In 1973 the plaintiff's joint tax return shows that $12,411 net profit was earned from the rug business. The corporation's tax return for 1975 reveals the financial results occasioned by incorporation of the business in 1974. According to the corporation's return, gross receipts for the business were $85,000 and its taxable income was $384.00. The corporation paid salaries of $1680.00 to both plaintiff and his wife and $314.00 for medical insurance premiums. It also shows that the corporation paid $3700.00 rent to plaintiff and that it paid $932.00 in real estate taxes. Finally, the plaintiff received $6752.00 interest on the note of the corporation. The total amount paid out to plaintiff and his wife from the corporation was $15,058.00. The corporate return for the previous year, 1974, reveals a similar financial picture. The joint returns of the plaintiff and his wife for the three years were also examined by the ALJ and they confirm this change in the business operations.

In his decision the ALJ stated that the issue in this case is whether the corporation should be disregarded as a mere sham, as a device to make the claimant eligible for retirement benefits when his activity in the business is precisely the same as it was before the business was incorporated. The ALJ determined that the sole motive of the plaintiff in incorporating the rug business was to obtain retirement benefits while continuing as a sole proprietor. He stated essentially that plaintiff would nonetheless be entitled to benefits if other circumstances warranted a finding that there had been a *substantial change* in the operation of his business and that the claimant's *actual earnings* had been cut below the statutory minimum. The ALJ stated that since there was no change in the amount of work performed by plaintiff and since plaintiff presently received from the corporation in salary, rent, real estate taxes and interest approximately the same amount as he had earned from the business before incorporation, then the rent, interest, property taxes and insurance premiums should be deemed net earnings from self-employment. Thus,

he found that although the corporation has been operated in compliance with New York law, the "Social Security Administration is not bound to recognize the corporate form."

The only issue to be determined by the court is whether the Secretary's decision is supported by substantial evidence and results from a proper application of the law to the facts. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Herbst v. Finch,* 473 F.2d 771, 774 (2d Cir. 1972).

Every individual who attains the age of 62 and satisfies certain specified conditions is entitled to old-age insurance benefits. 42 U.S.C. § 402(a). A person who is ostensibly eligible for retirement benefits, like the plaintiff, cannot receive "excess earnings" without becoming subject to deductions from monthly payments or losing entitlement to benefits altogether. 42 U.S.C. § 403(b), (f). "Earnings" is defined as the sum of (1) wages for services rendered and (2) net earnings from self-employment. 42 U.S.C. § 403(f)(5)(A). The Act provides for full payment of benefits to individuals under the age of 72 who earned no more than $2400 in 1974; no more than $2520 in 1975; and no more than $2760 in 1976. Where a person's excess earnings are high enough, the required deductions would cancel out all retirement benefits. The ALJ's decision that the rent, interest, and other payments were to be considered as earnings from self-employment meant that plaintiff would be ineligible for benefits because of excess earnings.

The crux of the ALJ's decision is his determination that the corporate form should be ignored because it is a sham device utilized by plaintiff to become eligible for retirement benefits. Although the ALJ also stated that the claimant's motive was not important in this case, it is clear from his formulation of the issue and his decision as a whole that he did consider motive an important factor. *See* ALJ's Hearing Decision, Tr. 14, at 20, 25, 26. The court believes that the ALJ's decision is erroneous.

In reaching this position, the reasoning of the court in *Stark v. Flemming*, 283 F.2d 410 (9th Cir. 1960), has proved persuasive. In that case, a claimant placed her assets—a farm and a duplex house—in a newly organized corporation which then paid her a monthly salary. There was no doubt that the corporation was set up to qualify the claimant for social security payments and the Secretary found the corporation was a sham. Reversing the district court's decision, which had affirmed the Secretary's denial of benefits, the circuit court stated:

> But here there seems to have been proper adherence to the normal corporate routines. And it is difficult to understand how the corporate arrangement would not have to be respected by others than the Secretary. And we think he must respect it, too.
>
> • Congress could have provided that the motivation to obtain social security by organizing a corporation would defeat the end. It did not.

*Stark, supra,* at 410. The clear import of this case and others is that an individual can arrange his financial matters in a way which will place him within the entitlement provisions of the Social Security Act, so long as the business transactions are bona fide and real. *See Gardner v. Hall,* 366 F.2d 132 (10th Cir. 1966); *Letz v. Weinberger,* 401 F.Supp. 598 (D.Colo.1975); *Jenkins v. Flemming,* 1 Unempl. Ins. Rep. (CCH), ¶ 10,416 (S.D.Fla.1960). The ALJ's expressed fear that to allow this will open the floodgates to many claimants is a question of policy which should be left to Congress. As the court noted in *Stark,* Congress could have provided that a claimant's motivation in incorporating a sole proprietorship could preclude eligibility for benefits, but it did not.

In this case, the ALJ recognized and found that the corporation of which plaintiff is president and controlling shareholder was properly incorporated and that it has complied with all the applicable laws. There can be little question that this is a real, bona fide corporation, as evidenced by the considerable tax savings realized by the plaintiff and his wife as a result of the incorporation. Thus, whether or not the sole motive of plaintiff was to qualify for retirement benefits—and, given the tax savings, that proposition is less clear than in *Stark, supra* —motive cannot be considered by the Secretary as a basis for disregarding the corporate form. On the contrary, the court believes the corporate form must be recognized and it would be manifestly unfair to allow the Social Security Administration to disregard the corporation where a party can obtain tax savings by incorporating his business.

It is well established, of course, that the Secretary may and should analyze the realities of a claimant's situation. *See, e. g., Newman v. Celebrezze,* 310 F.2d 780 (2d Cir. 1962). It is also true that a close corporation resembles a sole proprietorship in many respects. But, the realities of this case indicate that the corporation is bona fide and that the various payments made by the corporation to the plaintiff and his wife cannot be considered earnings from a sole proprietorship. The distinction must be made. *See Hughes v. Weinberger,* 1 Unempl. Ins. Rep. (CCH), ¶ 15,403 (N.Ind.1977).

Since the corporate form cannot be ignored, further consideration must be given to the various payments made by the corporation to plaintiff and his wife. They cannot simply be deemed earnings from self-employment. The statutory scheme does not prohibit a person from receiving certain unearned income. That scheme must be followed.

42 U.S.C. § 403(f)(5)(A) provides that an individual's earnings for a taxable year will be the sum of his wages *and* his net earnings from self-employment. Plaintiff's wages for the year 1975 were $1680.00. The amount paid by the corporation for medical insurance is exempted from wages by 42 U.S.C. § 409(b). Therefore, if he had no excess earnings from self-employment, he would be entitled to full benefits. 42 U.S.C. § 403(f)(5)(B)(i) provides that an individual's net earnings from self-employment are determined as provided in 42

U.S.C. § 411. That section specifically excludes rentals from real estate, § 411(a)(1), and interest on any note, § 411(a)(2), unless received in the course of a business as a real estate dealer or as a dealer in stocks or securities, respectively. Thus, since there was nothing in the record to contradict the testimony of the corporation's accountant that the rent paid was fair and reasonable, the $3700.00 rent paid to plaintiff cannot be charged against plaintiff as earnings from self-employment. *See Jenkins v. Flemming, supra.* Similarly, the note which the plaintiff received in exchange for the inventory of rugs represents a valid indebtedness and the $6752.00 interest paid on that note cannot be charged against the plaintiff.

Two items remain to be considered. The first is the small amount of undistributed corporate profit. Since the corporation is bona fide and cannot be ignored, whatever amount is not distributed cannot be charged against the plaintiff. *Letz v. Weinberger, supra.* The second issue regards the real estate taxes paid by the corporation. The plaintiff argues that they are part of the rent and, if not, that the total amount cannot be charged against the plaintiff because his wife owns an undivided one-half interest in the property. It is not necessary to reach the issue of whether the real estate taxes are disguised wages for, given the joint ownership of the property leased to the corporation, it seems clear that taxes paid to the plaintiff and his wife would have to be apportioned and that plaintiff could not be charged with more than 50%, or $466.00 in 1975. When added to the $1680.00 paid to the plaintiff as wages, the sum of $2146.00 would be considerably below the $2500.00 limit on earnings.

The above analysis indicates that, at least for 1975, the Secretary's decision to deny retirement benefits to plaintiff was erroneous. Because the record is unclear as to just when the incorporation of the business occurred in the year 1974, the case is remanded to the Secretary to make a determination not inconsistent with this decision as to the months in 1974 for which plaintiff is entitled to receive benefits.

So ordered.